IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

Richmond Division

**UNDER SEAL**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br>902 Richmond Road, Room 135,<br>Williamsburg, Virginia | 3:22-sw- 3:22sw180 |



FILED Oct 19 2022
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

### AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH AND SEIZURE WARRANT

I, Matthew J. Rubright, being duly sworn, depose and state as follows:

### INTRODUCTION

1. Your Affiant is a Special Agent with the Drug Enforcement Administration ("DEA") and has been employed as a Special Agent since January 2, 2022. Your Affiant attended and graduated from the sixteen-week DEA Basic Agent Training Academy at Quantico, Virginia. At the DEA training academy, your affiant received training in methods and techniques utilized by illegal drug traffickers to avoid detection by law enforcement, illicit drug identification, surveillance techniques, arrest procedures, undercover operations, safe and effective execute of search warrants, evidence procedures, among other topics. Since graduating from the DEA Academy, your affiant has participated in enforcement operations consisting of surveillance, execution of arrest and search warrants, undercover operations, confidential source management, and evidence processing that have resulted in the seizure of illicit narcotics and firearms, and the arrest and indictment of illegal drug traffickers in the Commonwealth of Virginia.

2. I submit this affidavit in support of an application for a search warrant for a dormitory room located at 902 Richmond Road, Room 135, Williamsburg, Virginia 23185 utilized by Brendan FITZPATRICK, as fully described in Attachment A, incorporated by reference herein ("dorm room").

3. Based upon the facts and information set forth herein, there is probable cause to believe that Brendan Kelly FITZPATRICK has engaged in distribution and possession with the intent to distribute of cocaine hydrochloride, a Schedule II controlled substance, and other controlled substances in violation of 21 U.S.C. § 841(a)(1), and use and carry a firearm during and in relation to a felony drug trafficking crime in violation of 18 U.S.C. § 924(c). Furthermore, there is probable cause to believe that evidence, fruit and instrumentalities of those crimes, as more fully described in Attachment B, incorporated by reference herein, will be located in the property more fully described in Attachment A, incorporated by reference herein.

4. The facts in this affidavit come from my personal observations, my training and experience, and credible information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not include all information known to me or the government.

## PROBABLE CAUSE

5. DEA is investigating the drug and firearm distribution activities of Brendan Kelly FITZPATRICK, and others in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c). In September 2021, state and federal law enforcement officers, including DEA agents and taskforce officers (collectively "agents") received information that FITZPATRICK was distributing illegal controlled substances. Through the development of cooperating individuals, agents learned that

FITZPATRICK is from Crozet, Virginia and is attending college at William & Mary, in Williamsburg, Virginia. Through the use of these cooperators, agents made purchases of cocaine hydrochloride directly from FITZPATRICK.

6. Specifically, on July 12, 2022, DEA and Virginia State Police conducted a joint operation using a Virginia State Police (VSP) confidential source (CS) to meet with FITZPATRICK in order to discuss future purchases of controlled substances. The VSP CS sent a typed message to FITZPATRICK's username "BRAVO6," utilizing the Telegram mobile messaging application ("Telegram App"), asking whether FITZPATRICK had anything that the VSP CS could help FITZPATRICK move to make some extra cash. FITZPATRICK responded using the Telegram App utilizing username "BRAVO6" and asked the VSP CS if he was available to meet at Claudius Crozet Park. According to the VSP CS FITZPATRICK was working at the park. Agents observed FITZPATRICK's gold Ford Taurus, parked by the pavilion at Claudius Crozet Park. Agents observed the VSP CS arrive at the area of the pavilion at Claudius Crozet Park and sent a message to FITZPATRICK notifying him that he had arrived. Agents observed VSP CS meet with FITZPATRICK for a few minutes. After the meeting the VSP CS returned to the agents and told agents that FITZPATRICK offered the VSP CS one-half ounce of cocaine for $800.00.

7. On July 25, 2022, agents utilized the VSP CS to purchase approximately one-half ounce (14 grams) of cocaine from FITZPATRICK for $800. FITZPATRICK had been reaching out to the VSP CS utilizing the Telegram App to discuss the VSP CS buying cocaine and marijuana from FITZPATRICK. On July 25, 2022, FITZPATRICK messaged the VSP CS using the Telegram App to set up a time and place for the buy. FITZPATRICK told the VSP CS that FITZPATRICK needed to finish mowing the lawn first. Agents went past FITZPATRICK'S

parents' home in Crozet and observed FITZPATRICK mowing the lawn. FITZPATRICK and VSP CS agreed to meet at the ACAC Fitness Center in Crozet, Virginia. Agents observed FITZPATRICK arrive at the meet location on a bicycle carrying a blue and white, hard-sided cooler. FITZPATRICK entered the VSP CS's vehicle where FITZPATRICK pulled the cocaine out of the cooler and discussed the purity of the cocaine with the VSP CS. FITZPATRICK told the VSP CS that he could cut the cocaine with vitamin B-12 to stretch it. The VSP CS gave FITZPATRICK $800 of official government funds and FITZPATRICK gave the VSP CS approximately one-half ounce (14 grams) of cocaine. FITZPATRICK also showed the VSP CS marijuana which was in the blue and white, hard-sided cooler and asked the VSP CS to find people to buy the marijuana and quoted prices for marijuana if the VSP CS wanted to buy or sell it. The VSP CS discussed buying more cocaine from FITZPATRICK later in the week. After the meeting agents observed FITZPATRICK ride his bicycle back to his parents' house with the blue and white, hard-sided cooler.

8. On August 16, 2022, agents utilized the VSP CS to purchase approximately 1 ounce of cocaine from FITZPATRICK for $1,600 and to introduce an undercover DEA Special Agent ("UC"). The VSP CS contacted FITZPATRICK using the Telegram App in the days leading up to the August 16, 2022, buy to finalize the date, time and location for the purchase. FITZPATRICK and the VSP CS agreed to meet on August 16, 2022, at the ACAC Fitness Center in Charlottesville, Virginia. During that meeting, agents observed FITZPATRICK enter the VSP CS's vehicle. While in the vehicle, FITZPATRICK discussed giving the VSP CS a $100 discount on the cocaine if the VSP CS would also purchase marijuana. The VSP CS declined the offer and paid FITZPATRICK $1,600 because the VSP CS did not want marijuana. FITZPATRICK gave the VSP CS a ziplocked bag containing the suspected cocaine. After the

FITZPATRICK distributed the suspected cocaine to the VSP CS, the UC arrived at the location and got into the back seat of the VSP CS's vehicle. The VSP CS introduced the UC to FITZPATRICK. The UC and FITZPATRICK discussed the future purchase of cocaine from FITZPATRICK and the possibility of purchasing other controlled substances. FITZPATRICK offered the UC marijuana and cocaine and discussed prices for one-time purchases and dealer prices for people who would be willing to sell controlled substances on a regular basis for FITZPATRICK. FITZPATRICK told the UC that it was $1,600 for a one-time purchase of an ounce of cocaine and $1,500 for returning customers and those who were willing to sell cocaine for FITZPATRICK. FITZPATRICK gave the UC his Telegram App username (BRAVO6) for the UC to use to contact FITZPATRICK to coordinate future buys.

9. Between August 16, 2022, and September 8, 2022, the UC and FITZPATRICK discussed and coordinated the purchase of one ounce of cocaine for $1,600 over the Telegram App. During these text discussions, the UC expressed concern about a friend who was dealing and got robbed. FITZPATRICK suggested that the UC and his friend needed "Glocks," referring to pistols. During these discussions, FITZPATRICK asked the UC how much cocaine the UC would be able to sell if the UC ramped things up. The UC told FITZPATRICK the UC would be willing to sell larger amounts of cocaine for FITZPATRICK and the UC wanted to purchase a firearm. FITZPATRICK asked the UC if a .380 would work and then quoted the UC the price of $500 for a 9-millimeter pistol.

10. On September 7, 2022, agents established surveillance on FITZPATRICK at 902 Richmond Road, Room 135, Williamsburg, Virginia, 23185. Agents confirmed through the college identified this location as FITZPATRICK'S current dormitory room at William & Mary ("dorm room"). The dormitory building appears to be a former motel, with parking areas just

outside the doorways into the rooms. Agents observed FITZPATRICK leaving from and returning to his dorm room. Agents also observed FITZPATRICK's gold Ford Taurus, parked in front of FITZPATRICK's dorm room.

11. On September 8, 2022, the UC contacted FITZPATRICK over the Telegram App to coordinate the time and location of the purchase of 1 ounce of cocaine and a 9mm pistol. FITZPATRICK told the UC that he had everything and that FITZPATRICK could meet the UC in Richmond, in the vicinity of Virginia Commonwealth University at 5:00 p.m. Agents located FITZPATRICK's gold Ford Taurus on the William & Mary campus prior to the buy and maintained surveillance on FITZPATRICK's gold Ford Taurus, and FITZPATRICK'S dorm room. Prior to the buy, agents observed FITZPATRICK entering his dorm room, and exiting the dorm room with two bags. Agents observed FITZPATRICK place one of the bags in the trunk and one bag in the passenger compartment of FITZPATRICK's gold Ford Taurus. Agents observed FITZPATRICK travel to a Walmart store in the Williamsburg area, where FITZPATRICK entered the store. A short while later FITZPATRICK exited the Walmart in possession of a black tool bag with red markings. FITZPATRICK entered his gold Ford Taurus and drove to the prearranged meet location in Richmond, Virginia. Agents witnessed FITZPATRICK exit the vehicle carrying the newly purchased black bag and enter the UC's vehicle. Once in the UC's vehicle, FITZPATRICK opened the black tool bag and showed the UC the pistol and the suspected cocaine without removing the items from the bag. The undercover agent gave FITZPATRICK $1600 for the cocaine and $500 for the pistol. FITZPATRICK gave the UC the black bag that contained 1 ounce of suspected cocaine and a 9mm firearm with an altered serial number. Further investigation revealed that FITZPATRICK purchased the 9mm firearm earlier that day from a pawn shop in Norfolk, Virginia.

12. During the course of this investigation, agents developed an additional cooperator, who made numerous statements against the cooperator's penal interests. Among the statements the cooperator made was that the cooperator was sourced marijuana, cocaine and pills from FITZPATRICK. That cooperator stated that FITZPATRICK would order illegal controlled substances off the Dark Web utilizing cryptocurrency. During the course of this investigation, agents intercepted a package that was sent to the cooperator which contained counterfeit alprazolam pills. Further investigation revealed that the pills had likely been ordered online. The cooperator told agents that the package was sent to the cooperator who received the package for FITZPATRICK. The information provided by the cooperator about FITZPATRICK's use of cryptocurrency was corroborated by communications between FITZPATRICK and the VSP CS. During the investigation, FITZPATRICK communicated on the Telegram App to the VSP CS that a buy would be delayed because one of FITZPATRICK'S cryptocurrency exchanges was flagged for money laundering. Subsequently, FITZPATRICK was able to distribute suspected cocaine to the VSP CS.

13. Based on your affiant's training and experience, your affiant knows that drug traffickers typically keep evidence, fruits and instrumentalities of their drug trafficking activities in their vehicles and residences. Such evidence, fruits and instrumentalities include cash and other drug proceeds obtained from their illegal drug sales, financial records, including cryptocurrency accounts or "wallets," pay/owe sheets, contact information, packaging materials, scales, firearms to protect their drugs and drug proceeds, and cellphones, laptop computers and tablets that contain evidence of their drug trafficking activities, to include electronic financial records, shipping records, tracking records, contact information, orders for illegal substances, payments for illegal substances, cryptocurrency accounts/wallets, passwords, multimedia

pictures and videos that document locations, associates and drug transactions, and communications with sources of supply and customers, including communications via Voice Over Internet Protocol and communication applications, such as the Telegram App and social media accounts.

14. Agents have observed FITZPATRICK utilize FITZPATRICK's gold Ford Taurus to transport cocaine to and proceeds from drug sales. On September 8, 2022, agents observed FITZPATRICK exit his dorm room carrying bags prior to FITZPATRICK'S sale of cocaine and a firearm to the UC. These facts support the conclusions that FITZPATRICK keeps items related to his drug trafficking activities, including drugs, in his dorm room and his gold Ford Taurus.

15. Since the last controlled buy on September 8, 2022, FITZPATRICK has continued to reach out to the UC to arrange another distribution. During these communications, FITZPATRICK messaged that he had cocaine and pills available for purchase and set up a deal for October 20, 2022, in Williamsburg, Virginia.

## CONCLUSION

16. Based on the foregoing, there is probable cause to believe that inside FITZPATRICK'S dorm room, more fully described in Attachment A, incorporated by reference

herein, will be found evidence, fruits and instrumentalities of violations of 21 U.S.C. § 841 and 18 U.S.C. § 924(c), as more fully described in Attachment B, incorporated by reference herein.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Matthew J. Rubright
Special Agent
Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this _19_ day of October, 2022, in Richmond, Virginia.

/s/ MRC

Mark R. Colombell
United States Magistrate Judge

## ATTACHMENT A

*Property to be searched*

The property to be searched is the dormitory room of Brendan FITZPATRICK located at 902 Richmond Road, Room 135, Williamsburg, Virginia, 23185, which is a motel-style one-room dwelling, that has a blue door and a window with white trim with the number 135 outside on the wall; the room serves as a dormitory room for the college of William and Mary in the Eastern District of Virginia.

## ATTACHMENT B

*Items to be Seized*

All items constituting evidence and/or instrumentalities of violations of 18 U.S.C. § 924(c) and 21 U.S.C. § 841, including, but not limited to, the following:

   a. Indicia of occupancy and residence, and ownership of the property to be searched, including, but not limited to, utility and telephone bills, cancelled envelopes, and keys;

   b. Controlled substances, packaging materials, drug paraphernalia, indicia of use and/or distribution, records and documents, receipts, notes, ledgers and other papers including any computerized or electronic records including cellular telephones, relating to the ordering, purchase, distribution or possession of illegal controlled substances;

   c. U.S. currency, cryptocurrency, and other illicit gains from the sale of illegal controlled substances;

   d. Address and/or telephone books and papers, including computerized or electronic address and/or telephone records, applications and social media accounts reflecting names, addresses, usernames, accounts and/or telephone numbers;

   e. Books, records, receipts, bank statements and records, money drafts, letters of credit, money order and cashier's checks, receipts, pass books, bank checks, safety deposit box keys, cryptocurrency "wallets," and any other items evidencing the obtaining, secreting, transfer, concealment, storage and/or expenditure of money or other assets;

   f. Documents, electronic records and other items evidencing the purchase, possession or ownership of firearms;

   g. Photographs, including digital images, of firearms, controlled substances, large quantities of U.S. currency, individuals possessing firearms, large amounts of currency, and/or controlled substances, and photographs depicting travel and association with individuals;

   h. Firearms, ammunition and the containers in which they were sold.

   j. Cellular telephones, computers, tablets, electronic storage devices, and data contained therein.